FILED

2009 May-15  PM 03:11
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | | |
|---|---|---|
| ROBERT H. HEPINSTALL, *et al.*, | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **vs.** | ) | |
| | ) | **Case No. 4:06-CV-1564-CLS** |
| MONSANTO COMPANY, INC., | ) | |
| *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION AND ORDER

This is an ERISA action.  Plaintiffs Robert H. Hepinstall, Wendell Sims, Larry Collins, Fred Works, Thomas Campbell, Russell Newman, and Jacky Blackwell are former employees of defendant Monsanto Company, Inc.  Plaintiffs worked at a now defunct factory located in Marshall County, Alabama ("the Sand Mountain Plant"). Despite the verbose and convoluted nature of plaintiffs' pleadings, the issue presented in this case is fundamentally straightforward:  plaintiffs allege that they are vested members of the Monsanto Company Salaried Employees' Pension Plan ("the Plan"), and that they have wrongfully been denied benefits due to them under the Plan by defendants Monsanto Company, Inc.; the Monsanto Company Salaried Employees' Pension Plan; the Employee Benefits Plan Committee; Pharmacia Corporation; the Monsanto Company Employee Benefits Executive Committee; the Solutia, Inc.,

Employees Pension Plan; and Solutia, Inc. Plaintiffs seek relief exclusively under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, *et seq*., and they assert their ERISA claims in three different capacities: (1) as individuals who were allegedly wrongfully denied pension benefits; (2) as representatives of a putative class of similarly situated individuals; and (3) on behalf of the Plan itself. This action is before the court on a dozen motions, three of which request the dismissal of plaintiffs' claims.[1] Due to the unique history of this dispute, however, those motions only recently became ripe for review.

The present case is, according to plaintiffs, a "continuation and follow-up" to *Gilley v. Monsanto Company, Inc.*, *et al.*, Civil Action No. 4:04-CV-00562-CLS, which was filed approximately two years prior to the commencement of this action.[2] Both cases arise from substantially identical facts, were brought by the same attorney

---

[1] *See* doc. no. 69 (Plaintiffs' Second Motion to Compel); doc. no. 82 (Motion to Dismiss Plaintiffs' Second Amended Complaint by Monsanto Company, Inc., the Monsanto Company Salaried Employees' Pension Plan, the Employee Benefits Plan Committee, Pharmacia Corporation, and the Monsanto Company Employee Benefits Executive Committee) ("the Monsanto Defendants); doc. no. 93 (Motion to Dismiss Plaintiffs' Second Amended Complaint by the Solutia Inc. Employees Pension Plan, and Solutia, Inc.); doc. no. 97 (Plaintiffs' Motion for Sanctions); doc. no. 99 (Second Motion to Compel and for the Sanction of Dismissal by the Monsanto Defendants); doc. no. 101 (Plaintiffs' Third Motion to Compel); doc. no. 103 (Plaintiffs' Motion to Strike); doc. no. 105 (Plaintiffs' "Motion to Clarify" the Third Motion to Compel); doc. no. 106 (Plaintiffs' Motion to "Supplement" the Second and Third Motions to Compel); doc. no. 112 (Plaintiffs' "Motion to Continue"); doc. no. 114 (Plaintiffs' "Supplemental Motion to Continue"); and doc. no. 115 (Plaintiffs' Revised "Supplemental Motion to Continue").

[2] Doc. no. 88 (Plaintiffs' Reply to Defendants' Response to Plaintiffs' Second Motion to Compel) at 2. *Gilley* was never consolidated with the present case.

for plaintiffs, advance ERISA claims, and involve many of the same defendants.[3]
Also, both cases have had tortuous histories.  *Gilley*, however, has reached a final
disposition, whereas the instant case, despite its age, has not moved beyond the initial
pleadings stage.  Nevertheless, and because of the striking similarities between the
two cases, this court will examine the various rulings by this court and the Eleventh
Circuit in *Gilley* when adjudicating the present dispute.  The Eleventh Circuit's recent
holdings in *Gilley* provide clear, *stare decisis* guidance for the disposition of
plaintiffs' claims in this action.  *See Gilley v. Monsanto Co., Inc.*, 490 F.3d 848 (11th
Cir. 2007) (*Gilley I*); *Gilley v. Monsanto Co., Inc.*, 309 Fed. Appx. 362 (11th Cir.
2009) (*Gilley II*).[4]  Upon review of the pleadings, the parties' motions, and their
respective briefs, defendants' motions to dismiss are due to be granted.

## I.  STANDARD OF REVIEW

The Federal Rules of Civil Procedure require that a complaint contain a "'short
and plain statement of the claim' that will give the defendant fair notice of what the
plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S.

---

[3] Solutia, Inc. and the Solutia, Inc., Employees Pension Plan were not parties to *Gilley*;
however, Gilley unsuccessfully sought, through his counsel, to add those entities as defendants to
his lawsuit.

[4] Prior to the Eleventh Circuit's ruling in *Gilley I*, the Clerk of court reassigned that case from
Senior United States District Judge Robert B. Propst (to whom it was originally assigned, and who
conducted the partial trial on the merits from which the *Gilley* defendants appealed) to the
undersigned judge.

41, 47 (1957) (quoting Fed. R. Civ. P. 8(a)(2)).  "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 546 (2007) (citations omitted).  Those factual allegations need not be detailed, but "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 545 (citing *Papasan v. Allain,* 478 U.S. 265, 286 (1986), and *Sanjuan v. American Board of Psychiatry and Neruology, Inc.,* 40 F.3d 247, 251 (7th Cir. 1994)) (bracketed alteration in *Twombly*).  Thus, even though notice pleading may not require that the pleader allege a "specific fact" to cover every element, or allege "with precision" each element of a claim, the complaint must "contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." *Roe v. Aware Woman Center for Choice, Inc*., 253 F.3d 678, 683 (11th Cir. 2001).

When ruling upon a Rule 12(b)(6) motion, the court must accept all well-pleaded facts as true, and construe them in the light most favorable to the non-moving party.  *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *see also, e.g., Brooks v. Blue Cross and Blue Shield of Florida*, 116 F.3d 1364, 1369 (11th Cir. 1997); *Quality Foods de Centro America, S.A. v. Latin American Agribusiness Dev. Corp., S.A.*, 711

4

F.2d 989, 994-95 (11th Cir. 1983).  Viewed in this manner, the factual allegations of the complaint "must be enough to raise a right to relief above the speculative level . . . ."  *Twombly,* 550 U.S. at 545 (citations omitted).  Stated differently, the plaintiffs must plead facts sufficient to "nudge[] [their] claims across the line from conceivable to plausible . . . ."  *Id.* at 547.

## II.  FACTS[5]

Each of the seven named plaintiffs began working at the Sand Mountain Plant in August of 1972.[6]  Allegedly, they were continuously employed at that facility until Monsanto "laid off" all employees in February of 1981, due to the permanent closure of the Sand Mountain Plant.[7]  Plaintiffs' "continuous" employment was collectively terminated in February of 1982 — one year after plaintiffs were placed on "layoff" status.[8]

When each plaintiff began his employment in 1972, defendant Monsanto maintained a defined pension plan for its employees, the "1971 Monsanto Company

---

[5] All allegations of fact have been construed in a light most favorable to the plaintiffs, and have been gleaned exclusively from plaintiffs' second amended complaint and plaintiffs' consolidated response to defendants motions to dismiss.  The parties' evidentiary submissions related to the motions to dismiss have not been considered.

[6] *See* doc. no. 64 (Second Amended Complaint), at ¶¶ 20, 21, 23-28.

[7] *Id.* at ¶ 9.

[8] Doc. no. 96 (Plaintiffs' Consolidated Response to Defendants' Motions to Dismiss), at 16-17 ("Monsanto automatically terminated Sand Mountain employees at the expiration of the one-year 'layoff' period . . . .").

5

Salaried Employees' Pension Plan" ("1971 Plan"), to which each plaintiff was a

"participant."   In *Gilley I*, the Eleventh Circuit summarized the relevant vesting

requirements of, and the amendments to, the 1971 Plan as follows:

> Under Monsanto's Salaried Employees' Pension Plan, certain
> employees are entitled to benefits if they are able to meet the vesting
> requirements of the plan. Although Monsanto has amended its pension
> plan several times over the years, all relevant versions of the plan set out
> the same basic vesting requirements: (1) an eligible employee must
> reach retirement age, and (2) the employee must acquire at least ten
> years of "Vested Service." An employee earns a year of Vested Service
> when he completes 1,000 "Hours of Service," defined as all hours of
> employment for which an employee is directly or indirectly
> compensated, during that year. The manner in which Hours of Service
> are calculated has varied as Monsanto has amended its pension plan.

> When Gilley began work at Monsanto, the 1971 Plan was in
> effect. The pension plan was amended in 1976 to comply with the
> requirements of the Employee Retirement Income Security Act of 1974,
> 29 U.S.C. §§ 1001 et seq. , which went into effect, for our purposes, in
> 1976.  According to Monsanto, both the 1971 Plan and the 1976
> post-amendment Plan utilized the "Elapsed Time Method" to calculate
> Vested Service for pension purposes. Under this method, an employee
> is credited with the hours that result from dividing the total number of
> calendar days of employment, including weekends and holidays, by 365
> and then multiplying that number by 2,080 (the total hours in a
> "Standard Work Year" based on a forty-hour work week). In other
> words, an employee's Hours of Service are determined based on the
> fraction of the year he is employed, multiplied by the Standard Work
> Year — if an individual is employed for 176 days out of the year, he
> would be entitled to 1,002 Hours of Service or one year of Vested
> Service.

> Sometime between 1979 and 1981, the Plan Committee decided
> to change the way Hours of Service are determined, adopting the

6

"95-Hour Rule" and incorporating it into the amendments to the 1981 Plan.  Under this calculation method, the provider credits all employees with ninety-five Hours of Service for each two-week period they are employed, regardless of the actual hours worked. The 95-Hour Rule expressly excludes additional credit for overtime hours, embodying the assumption that the fifteen extra Hours of Service credited on a bi-weekly basis (assuming a 40-hour week or 80 hours every two weeks) is a fair way to cover any overtime hours worked. In addition to adopting the 95-Hour Rule, the 1981 Plan stated that an employee's benefit rights are to be determined according to the pension plan in effect at the time that the employee separates from Monsanto.

*Gilley I*, 490 F.3d at 852-53 (footnote omitted).[9]

## III.  DISCUSSION

The claims of plaintiffs in the present action rely upon an incorrect and incurable assumption:  that each plaintiff vested under the terms of the 1976 Plan before the date of their collective termination.  In making that argument, however, plaintiffs paradoxically concede that the 1976 Plan was amended in 1981, and that none of the plaintiffs meet the vesting requirements under the 1981 Plan.  That said, plaintiffs argue that, as a matter of law, the 1981 Plan cannot be applied to them, and that this court should look instead to the 1976 Plan to determine whether plaintiffs vested prior to the termination of their employment.

It would be folly for this court to analyze plaintiffs' claims for benefits under

---

[9] The court takes note that the portion of *Gilley I* quoted above is not inconsistent with the allegations of plaintiffs' second amended complaint insofar as the Plan's various amendments and vesting requirements are concerned.

anything other than the 1981 Plan.  That row was plowed by this court in *Gilley I*, and the Eleventh Circuit made it crystal clear that such a course was erroneous. *See Gilley I*, 490 F.3d at 858-60.  Identical to each of the plaintiffs in this case, Wendell Gilley was "continuously" employed at the Sand Mountain Plant from August 1972 until February 1982.  *Id.* at 850.  Also, he advanced the same legal arguments that are presented by the plaintiffs in the present lawsuit — *i.e.*, that the 1981 Plan was not applicable to him, and that he was entitled to pension benefits under the calculation methods for vested service found in the 1976 Plan.  Persuaded by Gilley's arguments against the applicability of the 1981 Plan to his claim for benefits, Senior Judge Robert B. Propst refused to follow the provisions of the 1981 Plan, held a bench trial on the merits of Gilley's claim for benefits, and entered a judgment in his favor.  *Id.* at 853-55.[10]  On appeal, however, the Eleventh Circuit disagreed, and held that the so-called "95-Hour Rule" contained within the 1981 Plan provided the proper method of calculating whether Gilley had earned his pension.  *Id.* at 858-60.  Applying the 95-Hour Rule, that Court determined that Gilley did not vest under the 1981 Plan, reversed the entry of judgment in his favor, and remanded the case to this court for further proceedings.  *Id.*[11]

---

[10] *See supra* note 4.

[11] Like all published opinions by the Eleventh Circuit, that Court's holding in *Gilley* is binding authority on this court.  Moreover, the doctrine of *stare decisis* plays an important role here. The issues before this court in the present case are *identical* to those previously ruled upon by both

On remand from the Eleventh Circuit, this court found that, because Gilley had not vested under the Plan, he was no longer a "participant," as that term is defined in ERISA. *See Gilley v. Monsanto Co., Inc.*, No. 4:04-cv-00562-CLS-HGD, doc. no. 194 (N.D. Ala. Mar. 17, 2004). Based upon that finding, this court concluded that Gilley lacked standing to pursue *any* claims under ERISA and, consequently, that Gilley's claims were due to be dismissed for lack of jurisdiction. *Id*. That holding was recently affirmed by the Eleventh Circuit. *See Gilley II*, 309 Fed. Appx. at 362.

In the present case, plaintiffs have failed to assert any facts that distinguish the claims in this case from those asserted in *Gilley*, or, alternatively, that could plausibly entitle them to relief under ERISA. In their respective motions to dismiss, defendants correctly argue that, pursuant to the Eleventh Circuit's mandate in *Gilley I*, the 1981 Plan also governs these plaintiffs' claims for benefits. It is undisputed that, in order to vest under the Plan at issue, an employee must have completed ten years of continuous service. Under the 95-Hour Rule, plaintiffs fall short of that mark, and they concede that it would be "futile" to submit their claims for benefits for review if the 1981 Plan governs.[12] Moreover, this court notes that none of the named

---

this court and the Eleventh Circuit in the *Gilley* decisions. Plaintiffs' counsel will not be allowed to circumvent the adverse rulings in *Gilley* by filing and prosecuting a mirror image of that case with different named plaintiffs.

[12] *See* doc. no. 64 (Second Amended Complaint), at ¶¶ 84-85, 96, 121. *See also* doc. no. 96 (Plaintiffs' Consolidated Response to Defendants' Motions to Dismiss), at 16-17.

plaintiffs could have achieved ten years of continuous service under the terms of the 1976 Plan at the time the amended 1981 Plan took effect.  As such, this court finds that plaintiffs have failed to allege any facts that could plausibly lead to the conclusion that they vested under the terms of the 1981 Plan before the date of their collective termination.

Because plaintiffs did not vest prior to the termination of their employment, they lack standing to pursue claims under ERISA.  "The only parties that have standing to sue under ERISA are those listed in the civil enforcement provision of ERISA, codified at 29 U.S.C. § 1132(a)."  *Hobbs v. Blue Cross Blue Shield of Alabama*, 276 F.3d 1236, at 1240 (11th Cir. 2001) (citing *Cagle v. Bruner*, 112 F.3d 1510, 1514 (11th Cir. 1997) (same)).  An action seeking relief under ERISA can only be brought by a "participant," a "beneficiary," or a "fiduciary" of an ERISA plan; or, in certain instances, by the Secretary of the United States Department of Labor.  29 U.S.C. § 1132(a).  Plaintiffs do not allege that they are either beneficiaries or fiduciaries under the Plan, and the court takes judicial notice that none of the named plaintiffs is the Secretary of Labor.  Rather, plaintiffs attempt to bring their claims under ERISA's umbrella by alleging that they are "participants" under the Plan.  That position is untenable.

ERISA defines a "participant" as

10

> any employee or former employee of an employer, or any member or
> former member of an employee organization, *who is or may become
> eligible to receive a benefit* of any type *from an employee benefit plan*
> which covers employees of such employer or members of such
> organization, or whose beneficiaries may be eligible to receive any such
> benefit.

29 U.S.C. § 1002(7) (emphasis supplied).  As former employees who are not entitled

to vested benefits, plaintiffs can fall within that definition only if they "may become

eligible to receive a benefit" from the Plan.  *Id.*  The Supreme Court examined the

"may become eligible" requirement as it relates to former employees in *Firestone Tire

& Rubber Co. v. Bruch*, 489 U.S. 101 (1989).  Specifically, the Court held that the

requirement is satisfied if the former employee has a reasonable expectation of

returning to covered employment, or has a colorable claim that he will prevail in a

suit for vested benefits.  *Id.* at 117-18.  Here, plaintiffs do not fall within the "may

become eligible" requirement.

Plaintiffs have not alleged that they expect to return to covered employment.[13]

Moreover, plaintiffs do not have a colorable claim for vested benefits, in that none

of them vested prior to their collective termination from continuous employment.

Also, it is the long-standing law in the Eleventh Circuit that "a former employee

whose pension benefits were not vested at the time of [his] termination . . . is not a

---

[13] In fact, such an allegation would be baseless.  It is undisputed that the Sand Mountain
Facility has been shuttered for 28 years.

'participant' [under ERISA]."  *Nugent v. Jesuit High School of New Orleans*, 625 F.2d 1285, 1287 (5th Cir. 1980).[14]  *See also Jackson v. Sears, Roebuck and Co.*, 648 F.2d 225, 228-29 (5th Cir. June 15, 1981)[15] (agreeing with the holding in *Nugent* and concluding "that the 'may become eligible' language was intended [by Congress] to apply only to current employees.").  Accordingly, when considering plaintiffs' allegations of fact in light of the authority of *Firestone*, *Nugent*, and *Jackson*, none of the named plaintiffs is a "participant" under 29 U.S.C. § 1132(a).  As such, plaintiffs lack standing to pursue ERISA claims.  *See Hobbs*, 276 F.3d at 1240.

A plaintiff's standing to bring an action is a threshold jurisdictional issue.  *See Alabama v. United States Environmental Protection Agency*, 871 F.2d 1548, 1554 (11th Cir. 1989) (noting that "[s]tanding is a jurisdictional prerequisite to suit in federal court") (citing *Valley Forge Christian College v. Americans United for Separation of Church and State*, 454 U.S. 464, 475-76, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982)).  "As the Supreme Court made clear in *United States v. Hays*, 515 U.S. 737, [742], 115 S.Ct. 2431, 132 L.Ed.2d 635 (1995), '[t]he question of standing is not subject to waiver . . . and standing is perhaps the most important of [the jurisdictional] doctrines.'"  *Bischoff v. Osceola County, Florida*, 222 F.3d 874, 877 (11th Cir. 2000)

---

[14] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

[15] *See* Footnote 14, *supra*.

(bracketed text supplied).

## IV.  CONCLUSION AND ORDER

For the reasons stated herein, defendants' motions to dismiss are due to be, and they hereby are, GRANTED.[16]  Accordingly, plaintiffs' claims are DISMISSED with prejudice.  All remaining motions are DENIED.[17]  The Clerk is directed to close this file.  Costs are taxed as paid.

DONE and ORDERED this 15th day of May, 2009.

_____
United States District Judge

---

[16] *See* doc. no. 82; doc. no. 93.  *Nota bene*: Defendants advanced several alternative grounds for dismissal of this action; however, those arguments have not been analyzed by this court.

[17] *See* doc. no. 69; doc. no. 97; doc. no. 99; doc. no. 101; doc. no. 103; doc. no. 105; doc. no. 106; doc. no. 112; doc. no. 114; doc. no. 115.